IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DAVE A. MALSED,**                                   CV. 3:11- 00400 RE

              Plaintiff,                              **OPINION AND ORDER**

     v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

           Defendant.

**REDDEN**, Judge:

    Plaintiff Dave Malsed ("Malsed"), brings this action to obtain judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

his claim for Supplemental Security Income.  For the reasons set forth below, the decision of the

Commissioner is affirmed and this matter is dismissed.   .          .

1  - OPINION AND ORDER

## BACKGROUND

Born in 1962, Malsed has an eleventh grade education. In July 2000, Malsed applied for benefits alleging disability since September 23, 2000, due to cervical strain, mental health, and knee injury. On October 10, 2002, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated July 22, 2003, the ALJ found Malsed not disabled.

In September 2006, Malsed again applied for benefits alleging disability since July 23, 2003, due to dementia, memory problems, back problems, reading and writing impairments, anxiety and depression. Tr. 248. His application was denied initially and upon reconsideration. On December 7, 2009, a second hearing was held before an ALJ. In a decision dated January 5, 2010, the ALJ found Malsed not disabled. Malsed's request for review was denied, making the ALJ's decision the final decision of the Commissioner. Malsed now seeks judicial review of the Commissioner's decision.

## ALJ's DECISION

The ALJ found Malsed had the medically determinable severe impairments of degenerative disc disease of the neck and spine, an anxiety disorder, degenerative disease of the right knee, and chronic obstructive pulmonary disease. Tr. 17.

The ALJ determined that Malsed retained the residual functional capacity ("RFC") to perform a limited range of sedentary work, limited to occasional climbing of ramps and stairs, no climbing ladders, ropes or scaffolds, occasional balancing and crawling and occasional exposure to fumes, gases, odors, and dust. He is limited to occasional overhead reaching. He requires the ability to change between sitting and standing once an hour. Tr. 18.

The ALJ determined that Malsed was unable to return to his past relevant work, but retained the ability to work as a small products assembler or packager/sorter. Tr. 24.

The medical records accurately set out Malsed's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Malsed contends that the ALJ erred by: (1) improperly weighing physician testimony; (2) improperly rejecting lay testimony; and (3) failing to comply with SSR 96-8P.

## I. Physician Testimony

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician than a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

## A. John Ogisu, M.D.

Dr. Ogisu examined Malsed on January 16, 2003. Dr. Ogisu found that Malsed was limited by back pain to lifting 20 pounds occasionally, 10 pounds one third of the time, limited to

2 hours of standing in an eight hour work day, and sitting less than 6 hours in an 8 hour work day. Tr. 1042-44.

The ALJ noted that there are numerous medical records dated prior to the plaintiff's alleged onset date of July 23, 2003, and that that time period has been previously adjudicated. Tr. 23. The ALJ gave those assessments little weight in determining the residual functional capacity during the relevant time period.

Plaintiff contends that the ALJ erred by not given Dr. Ogisu's opinion greater weight. However, Dr. Ogisu's opinion that Malsed could sit for less than 6 hours in an 8 hour day is directly contradicted by the opinion of Dr. Overholser's opinion that he can sit for 6 hours in an 8 hour day. Tr. 1223. Because the examining physician's opinion is contradicted by the much more recent opinion of the treating physician, the ALJ did not err in giving it less weight.

**B. Dale J. Veith, Psy.D., Clinical Psychologist**

Dr. Veith conducted a neuropsychological screening evaluation on April 26 and May 3, 2003. Tr. 119-33. He reviewed the medical records and administered the Wechsler Adult Intelligence Scale (WAIS-III), the Wechsler Memory Scale (WMS-III), the Boston Diagnostic Aphasia Examination, the Boston Naming Test, the Trail Making Tests, parts A and B, the Rey 15 Item Test, the Beck Depression Inventory, the Brief Psychiatric Rating Scale, the Test of Memory Malingering, and the Reliable Digit Span. Tr. 120. Dr. Veith stated:

> It should be noted that the results of this assessment cannot be
> considered to accurately represent Dave's true abilities. He
> failed all three of the measures of effort that were included in
> this assessment. Dave's exceptionally poor performances on
> these measures of effort raise concerns about the quality and
> consistency of his effort on the other tests included in this
> battery. I will describe his behaviors and I will report the scores

4 - OPINION AND ORDER

> that he earned but I will not offer any interpretations of them as
> they are invalid.

Tr. 119-120. Dr. Veith noted that the "extreme dissimulation evident in his performance on

measures of effort reflects a high level of lack of cooperation with the evaluation....There was no

evidence of mannerisms or posturing that would have identified him as having a major mental

illness. His gait was within normal limits with some mild limping when he believed that he was

being observed but, not when he did not know that he was being observed." Tr. 124.

Dr. Veith stated that three measures of effort and malingering were included in the

testing, FIT, TOMM, and RDS. Each test is sensitive to less than adequate effort or attempts at

feigning or exaggerating memory problems. On FIT, a score of less than nine correct, without

serious brain injury, is highly suspicious. Malsed scored a 6, "well below what would be

expected given his complaints and history." Tr. 126.

On TOMM, Malsed's scores were positive for malingering, where he scored 21 when an

individual with dementia would be expected to earn an average score of 45.7. On RDS, scores

below 7 are considered evidence that the individual is not putting forth full effort. Malsed scored

6. *Id.*

In February 2007, Dr. Veith examined Malsed again. Tr. 641-49. He found that Malsed's

MMPI-2 was invalid because too many items were marked both true and false. Tr. 648. "He

was clearly not cooperating with the examination ...." *Id.* Other scores were positive for

malingering. Dr. Veith "found nothing in his presentation to support diagnoses of schizophrenia,

anxiety, depression, dementia, or panic attacks." Tr. 649. He diagnosed Malingering, probabic,

polysubstance dependence, and personality disorder, NOS.

Dr. Veith stated that "[t]he only reasonable conclusion that can be drawn from the results of this examination are that [plaintiff] is either conning his girlfriend into believing that he has severe deficits, or she is in [sic] accomplice in his efforts to fraudulently obtain financial benefits." Tr. 649.

### C.  Holly Hoch, M.D., Psychiatrist

Dr. Hoch examined plaintiff on December 30, 2003.  Tr. 593-97.  Malsed described episodes of anxiety, more severe in public places, and insomnia, much worse in the past year.  He reported chronic depression, and suicidal ideation.  Malsed stated that he had started using drugs and alcohol at age 12, but had not used alcohol or drugs for "several months."  Tr. 593.  He described an alcohol overdose that occurred a year or two prior, resulting in a coma, and increased cognitive problems since.  *Id.*  (There is evidence that Malsed was brought to the emergency room on January 20, 2001, intoxicated and positive for amphetamine, and released to police custody.  Tr. 549.  He was seen again on January 27, 2001, for lumbosacral strain.  Tr. 543.  There is no evidence of a coma.)

Dr. Hoch diagnosed anxiety, NOS, with panic.  "In this office setting, I am not able to pinpoint his cognitive deficit, but certainly the medical event that he describes and the difficulty with memory and speech since then, suggest a dementia induced by the overdose."  Tr. 595.  Dr. Hoch diagnosed Alcohol Dependence in early remission (presumed), polysubstance abuse in early remission (presumed), chronic back pain, and assessed a GAF of 41[1].

---

[1]    2 The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)).  It is essentially a scale of zero to 100 in which the clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental

**D.  James Rushing, M.D.**

Dr. Rushing treated the claimant from April 2006 to September 2007. He diagnosed depression and anxiety, and prescribed Klonopin, Lunesta, and Cymbalta. Malsed complained of chronic neck and back pain, and insomnia. Tr. 575-77. In May 2006, Dr. Rushing diagnosed chronic anxiety, insomnia, chronic neck/lumbar pain, and memory impairment due to chronic methamphetamine use. Tr. 571. X-rays showed osteoarthritis in the lumbar spine, increased since September 2001. Tr. 579. In June 2006 Dr. Rushing noted that Klonopin was helping with the anxiety, and prescribed that and methadone under a pain contract. Tr. 569.

In July 2006 Dr. Rushing diagnosed chronic anxiety. Malsed's mood was anxious and depressed, his affect flattened with some agitation. Tr. 565. Dr. Rushing noted that "short-term memory is significantly decreased. Long-term memory also appears deficient." *Id.* Malsed's spine was stiff, and Dr. Rushing increased the methadone. Tr. 566. In August 2006 Dr. Rushing noted that Malsed was in nearly constant pain and the range of motion in his neck was decreased. Dr. Rushing increased the methadone and added Percocet. Tr. 561. He diagnosed "chronic organic brain syndrome with prominent chronic anxiety and memory loss due to long term use of methamphetamines." Tr. 562.

In September 2006, Malsed reported numbness in his leg, dizziness, and leg buckling when standing. Tr. 559. On September 19, 2006, Dr. Rushing diagnosed lower back pain, stable, right sciatica, stable, and recent memory loss. Tr. 556.

------

limitations. *Id* at 34. A Global Assessment of Functioning ("GAF") score between 41 and 50 indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." *Id* at 32.

In March 2007, Dr. Rushing noted that "patient does fairly well when taking his regular pain meds." Tr. 874.  In April 2007, Dr. Rushing noted that "[u]nfortunately, he took himself off the clonopin [sic]," and was decreasing his dose of morphine "for some unclear reason." Tr. 662. In July 2007 Malsed complained of increased back pain and Rushing noted "almost exaggerated movements to get out of chair." Tr. 747.  In September 2007, Dr. Rushing discontinued prescribing MS Contin and prescribed methadone. Tr. 743.

The ALJ noted Dr. Rushing's findings, and that examination showed mild weakness of the right hamstring and quadricpes but no atrophy.  There was decreased sensation across the anterolateral aspect of the right thigh.  Tr. 19.  The ALJ noted the February 2007 examination by consulting physician James Harris, in which he noted "some degree of symptom magnification" and found Malsed capable of standing 2-3 hours and sitting 4-8 hours in an eight hour workday. Tr. 636.

Malsed argues that the ALJ failed to give controlling weight to Dr. Rushing's opinion. Plaintiff's Opening Brief, p. 24.  Counsel does not identify specifically what work related limitations were not adequately addressed by the limitation to sedentary work.

**E.  Scott Reeves, L.C.S.W.**

Mr. Reeves conducted a mental health assessment of plaintiff on July 12, 2006.  Tr. 607. Malsed reported "dementia, anxiety, depression and obsessive worries." *Id.*  Malsed had been ordered to obtain anger management treatment by his Probation Officer.  He reported that Dr. Rushing thought he should apply for social security disability.  Malsed "began to have a panic attack, I showed him how to control it with proper breathing." *Id.*  Malsed declined individual counseling.

8 - OPINION AND ORDER

In September 2006, Mr. Reeves prepared an Adult Behavioral Health Assessment. Tr. 584-88. Malsed reported that he was in special education in high school, and dropped out in eleventh grade. Tr. 584. He reported that he spent leisure time walking the dog, fishing, and taking the kids to the park. He was on probation for driving under the influence and assault. He was incarcerated five or six times for domestic abuse, but claimed innocence. *Id.* Malsed reported that he had been in mental health treatment "most of my life," for depression, anxiety and panic attacks. He asserted that his current anxiety and depression started three months ago.

Mr. Reeves noted impaired recent and remote memory, depressed mood, and scattered thought processes. Tr. 585-86. Malsed reported drinking one half gallon of Vodka daily until 18 months prior. Tr. 586. Mr. Reeves noted that he had no medical records to review. His diagnostic impressions were Major Depressive Disorder, Provisional, Substance-induced Dementia, Provisional, and History of Poly-Substance Dependence. He assessed a GAF score of 43.

On September 6, 2006, Mr. Reeves reported that he was not sure whether Malsed would need or benefit from counseling. They discussed working as compared to applying for disability. Tr. 604. On September 20, 2006, Malsed called and asked Mr. Reeves to make a statement about Malsed's ability to work. Tr. 603. On October 11, 2006, the parties agreed that counseling "did not seem to be helping...Due to memory problems, I doubt he'd benefit." Tr. 602.

Malsed argues that the ALJ failed to incorporate Mr. Reeves's opinion into his RFC. However, counsel points to no evidence of limitations that are not accounted for by the limitations to occasional decision making and simple tasks. The ALJ properly accounted for Malsed's mental limitations by limiting him to simple, repetitive tasks.

**F. J.B. Arnold, M.D.**

Dr. Arnold conducted a Comprehensive Psychiatric Assessment on July 25, 2006. Tr.

580-84. Malsed reported anxiety, panic, and depression. Tr. 580. Dr. Arnold noted that his

"memory does seem to fluctuate, but at times it is quite good. This gives one the impression that

memory deficiencies are based on the lack of trying (perhaps feigning) as opposed to the

pervasive impairment of cognitive functioning." R. 581. Malsed and his girlfriend stood "both

exhibiting copious amounts of pain behaviors." *Id.* Malsed asserted that he was demented as a

result of years of drug and alcohol abuse. Dr. Arnold noted that Malsed's judgment was intact,

that he was oriented to time, place and person, that his thought process was not fragmented or

psychotic, and that he reported no hallucinations or delusions. Dr. Arnold diagnosed Major

Depression, Recurrent, Alcohol Abuse, Remission unknown, and Drug Abuse, Remission

unknown, and assessed a GAF of 40. He noted that Malsed "rejects the standard medications

used in the treatment of anxiety, panic attacks, and depression as being ineffective" and asserted

the need for benzodiazepines and opiates. Tr. 583. Dr. Arnold opined that a residential pain

treatment program would be the most appropriate treatment.

Plaintiff argues that the ALJ "summarily ignored one consultative examiners [sic]," and

gave greater weight to Dr. Veith's opinion without providing an explanation for the

inconsistencies in the medical evidence. Plaintiff's Opening Brief, p. 26. Plaintiff does not

identify the alleged inconsistencies between Drs. Veith and Arnold, and I do not find any.

**G. AnneMarie Overhauser, M.D.**

Dr. Overhauser began treating Malsed in May 2009. His chief complaint was "pain

everywhere." Tr. 1194. Malsed had long acting morphine tabs, but "these do not help at all he

says. He is here because he had urine tests positive for benzos and prior providers stopped prescribing his narcotics. He is hoping to get narcotic prescription from us, and reports if we will not do it, why is he here." *Id.* She noted that Malsed admitted smoking marijuana the prior weekend. Tr. 1196.

Dr. Overhauser saw Malsed again on June 18, 2009, and noted that he was still upset about her refusal to provide narcotics. Tr. 1191. Dr. Overhauser reported that after his last appointment Malsed had gone to two emergency rooms and obtained MS Contin and benzodiazepines. Tr. 1190. She advised him to go to physical therapy, quit smoking, and exercise for pain. Tr. 1192.

In August 2009, Malsed reported he had not used any illegal drugs except marijuana for the past few months. Tr. 1187. He complained of vomiting, sweating, and shortness of breath. Dr. Overhauser listed his problems as dyspnea, seizures, depression with anxiety, drug-induced mood disorder, psychotic disorder with delusions, amphetamine and alcohol dependence in remission, cannabis dependence in remission, other chronic pain, hepatitis C, GERD, COPD, obstructive sleep apnea, tobacco use, diabetes, and hypertension. Tr. 1187-88. She recommended he return to Clackamas County Mental Health.

On November 30, 2009, Dr. Overhauser filled out a form prepared by counsel in which she opined that Malsed would work at a reduced pace if full-time and would need to be able to change position or posture more than once every two hours. Tr. 1220, 1222. As to mental health issues and malingering, she deferred to psychological professionals. Tr. 1220.

The ALJ noted Dr. Overhauser's opinion, and gave it "some credence," particularly concerning the claimant's exertional and postural limitations. Tr. 22. The ALJ gave little

11 - OPINION AND ORDER

weight to Dr. Overhauser's opinion that Malsed's most limiting conditions are psychiatric, noting substantial evidence of malingering and exaggeration of psychiatric symptoms. *Id.* The ALJ found that there was no evidence that Malsed's impairments were sufficiently severe to require a slowed pace or frequent absences in a sedentary setting.

Plaintiff contends that the ALJ failed adequately to weigh the global assessment of functioning ("GAF") scores. However, the ALJ relied instead on the treating and examining physicians' opinions about plaintiff's impairments. Tr. 19-23. The ALJ appropriately noted the multiple reports of malingering, feigning, and symptom magnification. Moreover the record contains multiple reports of drug and alcohol abuse. The ALJ did not err by giving the GAF scores little weight.

## II. Other Witness Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 416.913(d), 416.945(a)(3); *Bruce v. Astrue,* 557 F.3d 1113, 1115 (9th Cir. 2008). The ALJ may not reject such testimony without comment and must give reasons germane to the witness, although the ALJ is not required to discuss every witness's testimony. *Molina v. Astrue,* No. 10-16578, 2012 WL 1071637, at*7 (9th Cir. Apr. 2, 2012).

## A. Kamara Moser

Ms. Moser was Malsed's girlfriend. She testified that plaintiff had memory and concentration problems, difficulty completing tasks and understanding and following instructions. Tr. 221, 261. The ALJ found Ms. Moser's testimony was not credible in light of the assessment by Dr. Veith. Tr. 21. This was not error.

## B. Dave Malsed and Penny Malsed

12 - OPINION AND ORDER

Plaintiff's brother and sister-in-law testified that plaintiff has memory, anxiety and concentration problems, that he can walk four blocks, and that he sometimes drops things. Tr. 86. The ALJ noted that their reports were generally consistent with the RFC. Tr. 21. The ALJ found that the allegation that plaintiff has manipulative limitations contradicted by treating physician Dr. Overhouser's assertion that he had no manipulative limitations. The ALJ gave valid reasons, suported by treating and examining physicians, to reject that portion of the lay testimony that exceeds the RFC.

### III. Social Security Ruling 96-8p

Social Security Ruling 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC. SSR 96-8p (available at 1996 WL 374184). The Ruling defines the RFC assessment and instructs the ALJ to make findings in construing a claimant's RFC. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address the claimant's exertional and nonexertional capacity. *Id.* at *5-6.

Plaintiff argues that the ALJ failed to consider his depression or develop the record as to mental impairments. Plaintiff neither identifies nor documents what functional limitations arise from depression. The treatment notes plaintiff cites conclude that he has anxiety, not depression. Plaintiff's Brief at 12, 18-19, 594-95. Similarly, the records plaintiff cites from Clackamas County Mental Health contain a diagnosis of anxiety, not depression. Tr. 1092, 1109, 1115.

As set out above, the ALJ properly weighed the extensive medical record, and stated specific and legitimate reasons for his choices.  The ALJ's decision is supported by substantial evidence.

### CONCLUSION

For these reasons, the ALJ's decision that Malsed is not disabled is supported by substantial evidence.   The decision of the Commissioner is affirmed and this case is dismissed.

IT IS SO ORDERED.

Dated this $\mathcal{30}$ day of May, 2012.

JAMES A. REDDEN
United States District Judge